Levin, Appellant, *v.* Northwestern National Bank.

Argued October 29, 1943.   Before KELLER, P. J.,
BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY,
JJ. (RENO, J., absent).

*B. D. Oliensis,* with him *C. Max Ivins,* for appellant.

*Paul Maloney,* with him *Benjamin O. Frick,* for appellee.

OPINION BY RHODES, J., January 27, 1944:

Plaintiff, a depositor with a checking account with defendant, brought this action in assumpsit. The statement of claim avers that defendant agreed to accept from plaintiff such sums of money as he should from time to time deposit with defendant, and that defendant would pay out the money so deposited by plaintiff upon checks drawn by him. Under said agreement plaintiff made deposits with defendant aggregating $19,485.30. The checks issued by plaintiff against the deposits aggregated $19,072.38. It was further alleged that defendant on July 31, 1942, was indebted to plaintiff in the sum of $412.92; that defendant admitted a balance of $112.92 being due to plaintiff on said date; that defendant upon demand refused to pay the sum of $412.92, or any sum in excess of the sum of $112.92.[1]

The defense was payment; the agreement was admitted. In its affidavit of defense defendant averred that it had honored and paid checks issued by plaintiff in the aggregate amount of $19,372.38, and admitted that plaintiff made deposits in the aggregate amount of $19,485.30.

---

[1] At the time of trial it appears that the alleged balance on deposit was $335.20, and that defendant acknowledged a balance of $35.20.

At the trial plaintiff proved the amount of his deposits and the amount of the checks which he had issued against them. Defendant moved for a nonsuit which was denied.

The defense involved the payment of a check in the sum of $300 which had been charged against plaintiff's account. This check was payable to cash and bore a signature which purported to be that of plaintiff. It was dated May 16, 1942, cashed May 18, 1942, and charged to plaintiff's account May 20, 1942.

In charging the jury, the trial judge affirmed, among others, the following point submitted by defendant: "2. The plaintiff has the burden of proving all facts essential to make out his case and, therefore, has the burden of proving that the disputed check was a forgery." The jury returned a verdict for defendant. Plaintiff then moved for judgment n.o.v. and a new trial, both of which motions were dismissed. Plaintiff has appealed, and assigns as error, the refusal of his point for binding instructions, the affirming of defendant's points, and the admission of certain testimony.

If plaintiff had proceeded, as defendant suggests he should—that is, attempted to show that the money deposited had not been properly paid out—he would have been obliged to assume the burden of proving that the check in question was a forgery. But plaintiff rested, after having established the material averments in his plaintiff's statement, and thereupon defendant had the burden of showing proper payment of the entire amount of the deposits except the admitted balance in the account.[2]

---

[2] See *Levine v. Kass*, 87 Misc. Rep. 297, 149 N. Y. S. 950; *Scott v. Bradford Nat. Bank (Vt.)* 179 A. 149, 152; *Crane v. Dexter, Horton & Co.*, 5 Wash. 479, 32 P. 223; *McCarty v. First Nat. Bank of Birmingham*, 204 Ala. 424, 85 So. 754; *Bank of Hatfield v. Chatham*, 160 Ark. 530, 255 S. W. 31; *Cheney v. Bank of Bremen*, 25 Ga. App. 114, 102 S. E. 903; *DeLand v.*

The main question on this appeal relates to the charge of the trial judge as to the burden of proof. We think the instruction as to this was erroneous and prejudicial to plaintiff as "The burden of establishing the defense of payment authorized by the depositor is upon the bank ...... The only burden resting upon the plaintiff is proof of the deposit and of the balance remaining due after deducting payments admittedly authorized by plaintiff": *Leff v. Security Bank of New York,* 93 Misc. Rep. 139, 157 N. Y. S. 92, 96. Payment is an affirmative defense with the burden of proof on him who alleges it; no payment could be charged against plaintiff by defendant, unless made to such person as plaintiff had directed. Consequently, defendant had upon it the burden of showing that the check for $300 which it had paid as the genuine check of plaintiff was, in fact, his check.

In *Sears v. Birbeck et ux.,* 321 Pa. 375, at page 383, 184 A. 6, at page 10, our Supreme Court, in an opinion by the present Chief Justice, said: "It is a primary duty of the trial judge—a duty that must never be ignored—in charging a jury to clarify the issues so that the jury may comprehend the questions they are to decide. Such clarification is impossible without clear instruction as to the burden of proof, the shifting of the burden in certain states of the record, and, if plaintiff has offered prima facie proof of what he has pleaded, the duty then devolving on the defendant to come forward with evidence."

It was reversible error for the trial judge in charging the jury to place the burden of proof of forgery upon plaintiff.

*Dixon Nat. Bank,* 111 Ill. 323; *Boney v. Bank of Rose Hill,* 190 N. C. 863, 129 S. E. 583; *Fourth & Central Trust Co. of Cincinnati v. Johnson,* 24 Ohio App. 129, 156 N. E. 462; *Interstate Hosiery Mills, Inc., v. First Nat. Bank of Lansdale,* 139 Pa. Superior Ct. 181, 183, 11 A. 2d 537.

98

On the retrial of this case it should be borne in mind that confusion of the issues must be avoided. It is to be noted that at the trial, in addition to the point submitted by defendant as to the burden of proof, defendant submitted and the court affirmed two other points, the third and fourth,[3] which related to notice; the third point was taken from *McNeely Co. v. Bank of North America,* 221 Pa. 588, 592, 70 A. 891, and the fourth was taken from *Knights of Joseph Bldg. & Loan Ass'n v. Guarantee Trust & Safe Deposit Co.,* 69 Pa. Superior Ct. 89, 93. See, also, *Interstate Hosiery Mills, Inc., v. First Nat. Bank of Lansdale,* 139 Pa. Superior Ct. 181, 186, 187, 11 A. 2d 537. We may assume that these points were a correct statement of the law. But the fourth point seems to assume that plaintiff may have failed to give notice to defendant of the discovery of the forgery, and that as a result his right of action was gone. As a matter of fact, although any alleged failure to give notice by plaintiff was not asserted by defendant in its affidavit of defense, the evidence in the case indicates clearly that defendant in fact had notice, and therefore the charge as to the failure or necessity of notice could only confuse the jury and becloud the issue.[4] There was no factual situation to which defendant's fourth point for charge could apply.

---

[3] "3. The duty of a depositor in a bank, upon discovering that it has paid and charged to his account ...... a check bearing his forged signature as drawer ...... is to promptly notify it of the forgery. This notification is not only a duty, but it is what a depositor will instinctively do on discovering, upon the return of his bank book with canceled checks charged to his account, that there are among them some which he never signed."

"4. If it is once shown that the plaintiff failed to give prompt notice of the discovery of the forgery, the plaintiff's right of action is gone. The law assumes, and does not find it necessary to conduct an inquiry to verify the assumption, that had the notice been given promptly, the bank might have taken steps to protect itself as against ...... (the forger)."

[4] Defendant's assistant cashier testified as follows: "Q. When

Evidence was admitted over the objection of plaintiff to show that plaintiff had failed to cooperate with defendant, and had refused to sign a prepared affidavit. Plaintiff assigns as error the admission of this unsigned affidavit and the testimony concerning it. In his argument plaintiff states that there is no law requiring him to sign such an affidavit, and to do so would be to perjure himself. We are unable to see in what manner plaintiff would have perjured himself in signing this affidavit unless the check was in fact not a forgery, or unless plaintiff had some guilty knowledge as to how or by whom the particular check had been issued. His attitude was evidence which could be considered by a jury in determining whether or not the check was issued by, at the direction of, or with the knowledge of, plaintiff. Defendant having the burden of proof it could not be denied the right to introduce circumstantial evidence which would indicate the genuineness of the check.

We are of the opinion that, in the interest of a fair trial of the real issue in this case, a new trial should be granted. See *Furer v. May,* 115 Pa. Superior Ct. 28, 36, 174 A. 630.

Judgment is reversed with a venire.

---

was that check first called to your attention, and by whom? A. The following morning, by our head bookkeeper. The bookkeeper, posting on the ledger, thought that the signature was not similar to that of other checks signed by Philip Levin. It was immediately brought to our attention, then Mr. Levin was contacted, and at that time Mr. Levin stated he did not sign this particular check. Inasmuch as it was drawn against the account of Philip Levin, the account was charged with this particular item, and an affidavit prepared setting forth the claim that this check was not signed by him, nor had he any knowledge—"

On June 1, 1942, plaintiff received from defendant a statement of his account. This statement contained the following notation: "Check for 300.00 charged to acct 5/20/42 payable to cash. Memo: Ck for 300 claimed not signed by Philip Levin. Affidavit made up but not yet complete or signed by him."