16021

CARROLL v. SOUTH CAROLINA NAT. BANK

(45 S. E. (2d) 729)

*Mr. C. S. Monteith, Jr.,* of Columbia, for Appellant,

*Messrs. Herbert & Dial,* of Columbia, for Respondent,

December 10, 1947.

OXNER, J.: This action was brought to recover from the South Carolina National Bank (Columbia branch) the amount of a check drawn on her account by the plaintiff, a depositor, which the bank paid and charged against the plaintiff after it had been notified by her to stop payment of the check. The case was heard upon an agreed statement of facts which may be summarized as follows:

On April 1, 1946, the plaintiff drew a check on her account for $500.00, payable to Mrs. Joe Radish of Myrtle Beach, South Carolina. On the following day, April 2nd, plaintiff telephoned one of the officers or agents of the bank and, after describing the check, instructed the bank to stop payment. She was informed that such an order could not be accepted by a telephone call and that it would be necessary for her to come to the bank and sign a "Stop Payment

Notice". As a result of this conversation, plaintiff sent her daughter to the bank who, as her agent, signed an order to stop payment on a form prepared by the bank which contained the following provision in print: "Should you pay this check through inadvertence or oversight, it is expressly understood that you will in no way be responsible".

On or about April 5th, after the filing of the notice to stop payment, the bank paid the check and charged same to the account of the plaintiff. When the check was received by the bank, it bore certain notations showing that it had previously been cashed by the Myrtle Beach Bank & Trust Company, of Myrtle Beach, South Carolina, and it was to this Bank & Trust Company that payment was made. The plaintiff thereafter demanded that the defendant bank restore to her credit the amount of said check which she claimed was wrongfully charged to her account, but the bank refused to do so. On June 5th and again on July 9th, Mr. B. M. Edwards, President of the defendant bank, wrote a letter to Mrs. Joe Radish, the payee of the check, endeavoring to recover the amount which had been paid to her. We quote the following from his letter of July 9th: "For some unaccountable reason the bookkeeper overlooked this stop payment order and when the check came in several days later, I think it was on Friday, it was paid by mistake. We do not owe you any money, and we do not owe Mrs. Carroll any money, except that our man made a mistake. If there is any dispute, it is between you and Mrs. Carroll, and it doesn't look fair that we should be made 'the goat.'"

Plaintiff alleged that said check was negligently paid by the bank after being expressly instructed not to do so and asked judgment for the amount of the check with interest thereon. The bank denied in its answer that it was negligent or that it assumed responsibility for any error in failing to stop payment of the check, and as a further defense set up the provision relieving it from responsibility on account of paying the check through inadvertence or oversight "in bar of any claim which the plaintiff may have". The Court be-

low did not pass upon the question of whether the bank was negligent and held that the provision mentioned relieved the bank of all responsibility on account of any negligence in failing to stop payment of said check. Accordingly, the Court ordered judgment in favor of the bank from which the plaintiff has appealed.

Before entering into a discussion of the issues raised on this appeal, it may not be amiss to state certain well established general principles. It was formerly held that in this State a check operated as an assignment *pro tanto* of the funds of the depositor and that payment could not be stopped if the check had passed into the hands of a *bona fide* holder. *Loan & Savings Bank v. Farmers' & Merchants' Bank,* 74 S. C. 210, 54 S. E. 364, 114 Am. St. Rep. 991. This was changed by the adoption of the Negotiable Instrument Act. Section 6940, Code of 1942. A bank owes its depositor the amount of his deposit but unless it accepts or certifies the check, it owes no duty to the payee. *Yarborough v. People's National Bank,* 162 S. C. 332, 160 S. E. 844. Under the Negotiable Instrument Law, a check is a mere order upon a bank to pay from the depositor's account according to the instructions therein contained, which is subject to revocation or cancellation by the drawer at any time before the check has been certified or accepted, or paid by the bank. 7 Am. Jur., Banks, Section 602, page 437; 9 C. J. S., Banks and Banking, § 344. If the bank upon which a check is drawn pays the check after receiving seasonable notice from the drawer to stop payment, it is liable to the drawer therefor. This common law liability grows out of the relationship of the parties, which is that of debtor and creditor. After the receipt of an unequivocal notice to stop payment, a bank, as the agent of the drawer, must obey his instructions and pays at its peril. *Gaita v. Windsor Bank,* 251 N. Y. 152, 167 N. E. 203; *Tremont Trust Co. v. Burack,* 235 Mass. 398, 126 N. E. 782, 9 A. L. R. 1067; Vol. 6, Zollmann on Banks and Banking, §§ 3701 and 3710. The question of whether this common law liability of a bank for

paying a check in disregard of the drawer's instructions may be limited by contract so as to relieve the bank from liability for negligence is one upon which, as hereinafter pointed out, the courts are not in accord.

Counsel for respondent state in their brief that "appellant has brought this suit on the theory of negligence" and the first question for determination is: "Has appellant proved negligence?" We accept respondent's suggestion as to the order in which the issues should be disposed of. Necessarily involved in the question stated by respondent is the inquiry as to whether under the agreed statement of facts appellant has established a *prima facie* case of liability.

"A bank sued for payments claimed to have been wrongfully made by it on a check has been held to have the burden of proving that the check was a due and proper one of the depositor and was properly paid". 9 C. J. S., Banks and Banking, § 411. In *Albers v. Commercial Bank,* 85 Mo. 173, 55 Am. Rep. 355, it was held that where the drawer of a check has given to the bank timely notice not to pay it, the burden of proving that it had already been paid is on the bank. In a suit by a depositor to recover his bank balance, after he has proved the amount of his deposits and the balance due after deducting admittedly authorized payments, the burden is on the bank of establishing that payments made on controverted checks were proper credits on account. *Levin v. Northwestern National Bank,* 154 Pa. Super. 94, 35 A. (2d) 769; *Boney v. Bank of Rose Hill,* 190 N. C. 863, 129 S. E. 583. In an action to recover a deposit where the defense is that of payment of a check which the depositor claims to be a forgery, it has been held that such defense is an affirmative one and the burden of showing that there was an authorized payment is upon the bank. *Fourth & Central Trust Co. v. Rowe,* 122 Ohio St. 1, 170 N. E. 439. In *John H. Mahon Co. v. Huntington National Bank of Columbus,* 62 Ohio App. 261, 23 N. E. (2d) 638, 640, the Court stated that a bank is bound to act in good faith and to exercise reasonable care after it has

received a stop payment order to avoid payment to the wrong party or contrary to the order of the drawer, and that "the burden is on the bank to show such good faith and reasonable care".

Applying the foregoing principles to the instant case, we think the admitted facts show a *prima facie* case of liability and the burden of producing evidence to overcome appellant's *prima facie* case by showing that it acted in good faith and used all reasonable efforts to comply with the instructions given rested on respondent. It is not unreasonable to require the bank to explain the circumstances under which the check was paid. Appellant would not be expected to know these facts. She intrusted the bank with her funds and gave it exclusive possession and it has the exclusive means of knowing why it paid out appellant's funds contrary to her instructions. To require an explanation imposes no hardship. It is not necessary to resort to the doctrine of *res ipsa loquitur,* which has not been adopted in this State, to sustain this view as to the burden of proof. We have held, as pointed out in *Gilland v. Peter's Dry Cleaning Co.,* 195 S. C. 417, 11 S. E. (2d) 857, 858, that "there are certain relationships out of which presumptions arise which may affect the burden of proof". The plaintiff in that case brought an action to recover damages to a dinner coat which had been delivered to defendant to be cleaned and pressed. The Court held that when the plaintiff proved the delivery of the coat to the defendant in good condition and its return in a damaged condition, he made out a *prima facie* case and the burden then rested upon the defendant to offer evidence that it exercised ordinary care. The Court reached this conclusion upon the theory that the defendant had exclusive possession of the property and the facts attending the injury or damage to the coat were peculiarly within its knowledge, and that the plaintiff could not be expected to know the details of defendant's business or the cause of the loss or damage. Of course, the relation there was that of bailor and bailee which does not exist in the in-

stant case but there does exist substantially the same reason and necessity for imposing upon respondent the burden of explaining the transaction.

■ The agreed statement of facts contains no explanation of the failure of respondent to decline payment of the check other than that heretofore quoted from the letter of the President of the bank to the payee of the check. We may add that this letter can be reasonably construed as an admission of negligence. Respondent apparently elected not to explain the circumstances and to stand upon its legal position that appellant was required to offer affirmative proof of negligence. This position we have held to be unsound.

■ Respondent further seeks to avoid its common law liability by invoking the provision in the order to stop payment to the effect that the bank would not be responsible in the event that the check was paid through inadvertence or oversight. This was an affirmative defense pleaded by respondent "in bar of any claim which plaintiff may have". As to this defense the burden was upon respondent to show that the check was paid through mere "inadvertence or oversight". Having offered no evidence as to the circumstances surrounding the payment, this defense has not been established. It follows that appellant is entitled to judgment for the amount of the check with interest.

In the foregoing discussion we have assumed that the provision in the notice to stop payment was valid. Appellant contends that if this stipulation is construed as releasing the bank from all liability for negligence in failing to comply with the stop payment order, which is the construction sought by respondent, it is without consideration and void as against public policy. The view is taken in some jurisdictions that such a stipulation should be upheld under the broad policy of freedom of contract. *Tremont Trust Co. v. Burack, supra; Gaita v. Windsor Bank, supra; Pyramid Musical Corporation v. Floral Park Board,* 268 App. Div.

783, 48 N. Y. S. (2d) 866; *Hodnick v. Fidelity Trust Co.,* 96 Ind. App. 342, 183 N. E. 488, *John H. Mahon Co. v. Huntington National Bank of Columbus, supra.* Other courts hold that a stipulation purporting to release the bank from liability for any negligence in the observance of the stop payment order is without consideration and void as against public policy. *Hiroshima v. Bank of Italy,* 78 Cal. App. 362, 248 P. 947; *Grisinger v. Golden State Bank of Long Beach,* 92 Cal. App. 443, 268 P. 425. The precise question is one of novel impression in this State. The conclusion heretofore reached makes it unnecessary in this case for us to pass upon the question and we leave it undetermined. It is also unnecessary to pass upon the other questions raised by the exceptions.

The judgment of the lower Court is reversed and the case is remanded for entry of judgment in favor of appellant in accordance with the prayer of her complaint.

FISHBURNE, STUKES, and TAYLOR, JJ., concur.

BAKER, CJ., concurs in result.